**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERTA L. STEWART,
Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Case No. 1:19-cv-180
McFarland, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Roberta L. Stewart brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 10), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

**I. Procedural Background**

Plaintiff filed her applications for DIB and SSI in July 2015, alleging disability since October 8, 2013 due to subarachnoid hemorrhage, closed fractures of the lumbar spine at L2-L4, occipital fracture of the skull, iron deficiency, and anxiety. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Deborah F. Sanders. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on December 8, 2017. On May 31, 2018, ALJ Sanders issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of ALJ Sanders the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 8, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease (COPD), essential tremor, short-term memory loss, depression, posttraumatic stress disorder (PTSD), and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work with lifting and carrying up to twenty pounds occasionally and ten pounds frequently. The [plaintiff] is capable of standing and/or walking up to six hours in an eight-hour workday and sitting up to six hours in an eight-hour workday, but she needs the option to change position after every thirty minutes of sitting or standing while remaining on task. The [plaintiff] is limited to occasional climbing of ramps or stairs, no climbing of ladders, ropes, or scaffolds, no crawling, and occasional balancing, stooping, kneeling, and crouching. The [plaintiff] should never work at unprotected heights or around dangerous machinery, and she should never operate a motor vehicle. The [plaintiff] should avoid concentrated exposure to extreme cold, extreme heat, excessive humidity, or pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. She is capable of understanding, remembering, and carrying out simple, routine, repetitive tasks, but not at a production rate pace and with no strict production quotas. The [plaintiff] is limited to occasional interaction with coworkers but with no tandem or shared tasks beyond orientation with no work with the public, and she is able to

> adapt to a relatively static work environment with changes introduced gradually and explained.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]
>
> 7. The [plaintiff] was born [in] . . . 1965 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
> 8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).
>
> 10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]
>
> 11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 8, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-34).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[1] Plaintiff has past relevant work as a cleaner, a medium, unskilled position; a lens polisher, a light, skilled position; and a slitter-operator, a heavy, skilled position, light as performed. (Tr. 32, 78).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as inspector (100,000 jobs in the national economy), marking clerk (300,000 jobs in the national economy), and routing clerk (80,000 jobs in the national economy). (Tr. 33, 80).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Error**

On appeal, plaintiff alleges a single assignment of error: that the ALJ erred in weighing the medical opinions of her treating psychiatrist, Dr. Marvin Baula, M.D., and counselor, Ms. Katherine Reeves, LPC, and therefore erred in formulating her residual functional capacity ("RFC"). (Docs. 10, 18). The Court will first address whether the ALJ erred in weighing Dr. Baula's medical opinions.

On October 1, 2015, Dr. Baula, a psychiatrist at the Comprehensive Counseling Center, completed a mental status questionnaire at the request of the state agency. Dr. Baula opined that plaintiff had no issues with sustaining concentration, persisting at tasks, completing tasks in a timely fashion, or remembering, understanding, or following directions. (Tr. 323). He also opined that plaintiff had severe anxiety around other people, would have difficulty adapting to change, and would not react well to pressure due to high anxiety. (*Id.*).

On April 19, 2016, Dr. Baula completed another mental impairment questionnaire. (Tr. 627-34). Dr. Baula listed plaintiff's diagnoses as PTSD and major depressive disorder. He noted that plaintiff had a fair response to therapy and medications. (Tr. 627). Dr. Baula listed clinical findings as severe anxiety around large crowds. (*Id.*). Dr. Baula opined that plaintiff had "no useful ability to function" in the following mental abilities and aptitudes needed to do unskilled work: maintaining attention for a two hour segment; sustaining an ordinary routine without special supervision; working in concentration in proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unremarkable number and length of rest periods; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. (Tr. 629). Dr. Baula also opined that plaintiff had no useful ability to function in dealing with stress of semiskilled or skilled work. (*Id.*). Dr. Baula further opined that plaintiff had marked difficulties in maintaining social functioning and had three episodes of decompensation within a 12-month period, each of two weeks duration. (Tr. 630). He opined that plaintiff would be absent from work more than four times per month and would be unable to function independently outside her home due to an anxiety disorder. (Tr. 631-32).

In weighing the medical opinions of record, the ALJ afforded some weight to the opinions of Dr. Baula, plaintiff's treating psychiatrist, and found that his opinions were not fully supported by the record. (Tr. 30). The ALJ found that Dr. Baula's October 2015 opinion was only partially consistent with the record, noting that Dr. Baula's opinion that plaintiff had no issues with sustaining concentration, persisting at tasks, completing tasks in a timely fashion, or remembering, understanding, or following directions was inconsistent with the record demonstrating that plaintiff had "some difficulties in understanding and remembering as a result of her head injury, and she also reported issues maintaining attention, concentration, and persistence in later records." (Tr. 31). The ALJ found that Dr. Baula's April 2016 opinion was internally inconsistent. (*Id.*). Specifically, the ALJ noted that Dr. Baula opined that plaintiff had a low IQ or reduced intellectual function but later opined that plaintiff did not appear to have a deficit in intelligence but reported problems with reading comprehension in school. (*Id.*). The ALJ also noted that Dr. Baula's opinion that plaintiff "had a complete inability to function independently outside [her] home" was inconsistent with evidence showing that plaintiff walked with her grandson to the school one month earlier. (*Id.*). The ALJ further noted that Dr. Baula's opinion that plaintiff was unable to maintain sustained gainful activity was inconsistent with "the complete longitudinal record with recent treatment notes indicating relatively good functioning." (*Id.*).

Plaintiff first argues that the ALJ applied an incorrect legal standard by requiring that Dr. Baula's treating source opinions be "fully supported by the record." (Doc. 7 at 7-8). In response, the Commissioner argues that the ALJ's conclusion that Dr. Baula's opinions were not "fully supported by the record" constitutes harmless error because it "came after an extended

discussion of both the rules regarding how to weigh a treating source and specific application of the 20 C.F.R. § 404.1527 factors to Dr. Baula's opinions." (Doc. 17 at 10).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.l 527(c)(2)). *See also Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded to the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

The Court agrees with plaintiff that the ALJ applied an incorrect legal standard to Dr. Baula's opinions, which constitutes reversible error. Similarly, in *Goffe v. Comm'r of Soc. Sec.*, this Court recently held that an ALJ committed reversible error by requiring that the evidence "fully support" a treating physician's opinion. No. 3:18-cv-00115, 2019 WL 3406433, at *2-4 (S.D. Ohio July 29, 2019) (Report and Recommendation) (Ovington, M.J), *adopted*, 2019 WL 4016276 (S.D. Ohio Aug. 26, 2019). The Court noted that the treating physician rule requires an ALJ to first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic [techniques] and not inconsistent with other substantial evidence in the case record. . . ." *Id.* at *4 (citing Social Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996); 20 C.F.R. § 404.1527(c); *Rogers*, 486 F.3d at 242). The Court explained that "[f]or a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence." *Id.* (quoting SSR 96-2p). The Court further explained that the treating source rule's use of the term

"not inconsistent" is "used to indicate that a well-supported opinion need not be supported directly by all the other evidence as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." *Id.* (quoting SSR 96-2p).

Here, by requiring that Dr. Baula's opinions be "fully supported by the record," the ALJ measured Dr. Baula's opinions "against a higher legal standard than Social Security law imposes." *Goffe*, 2019 WL 3406433, at *4. *See also Hill v. Berryhill*, No. 3:16-cv-00174, 2017 WL 1593476, at *5 (S.D. Ohio May 2, 2017) (Report and Recommendation), *adopted*, 2017 WL 3332238 (S.D. Ohio Aug. 4, 2017). Even though the ALJ cited the treating physician rule and correctly described its application, the ALJ incorrectly required Dr. Baula's opinions to be fully supported by the record. *See Goffe*, 2019 WL 3406433, at *4 (rejecting the Commissioner's argument that the ALJ cited the treating physician rule and correctly described its legal criteria). The ALJ's failure to follow agency rules and regulations in weighing Dr. Baula's opinions in this case denotes a lack of substantial evidence in this case, even if the Court were to find that the ALJ's conclusion was justified based upon the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The ALJ's error in this regard ultimately prejudiced plaintiff's case because the ALJ gave "little weight" to Dr. Baula's opinions. *See Goffe*, 2019 WL 3406433, at *4 ("[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'") (quoting *Rabbers*, 582 F.3d at 651 (internal quotations and citations omitted)).

In addition to applying an improper legal standard, the ALJ ignored or overlooked evidence that weighed in favor of crediting Dr. Baula's opinions, failed to provide good reasons for rejecting Dr. Baula's opinions, and failed to consider many of the regulatory factors listed in

20 C.F.R. §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). The ALJ failed to consider that Dr. Baula treated plaintiff every two months since beginning mental health treatment at the Comprehensive Counseling Center in Middletown, Ohio in October 2014. The ALJ also failed to give good reasons for rejecting Dr. Baula's opinions—most notably, his April 2016 opinion. Dr. Baula's April 2016 opinion is thorough and well-reasoned and includes clinical findings, diagnoses, and a two-page addendum further explaining his findings that plaintiff has no useful ability to function in several mental abilities and aptitudes needed to perform work. (*See* Tr. 627-34). The ALJ's conclusion that Dr. Baula's opinion was inconsistent with the longitudinal record is unsupported and contradicted by treatment notes and clinical findings indicating that plaintiff suffered from mental health issues such as anxiety, panic attacks around crowds, and symptoms of PTSD, just as Dr. Baula assessed in his opinion. (*See* Tr. 386, 390—in November 2014, plaintiff reported frequent panic attacks about going outside the home and PTSD symptoms around crowds; Tr. 383—Dr. Baula noted that plaintiff had PTSD symptoms; Tr. 370—in May 2015, plaintiff reported to Dr. Baula that her PTSD symptoms remained; Tr. 865-69—in July 2015, plaintiff continued to report high levels of anxiety around crowds of people and had symptoms of constant worrying and racing thoughts; Tr. 336—in September 2015, Dr. Baula listed plaintiff's diagnoses as agoraphobia with panic disorder; Tr. 548—in November 2015, plaintiff reported to Dr. Baula that she passed out at her birthday party when too many people came; Tr. 511-15—in a March 2016 diagnostic update, plaintiff's counselor, Jessica Tupa, LPC, noted that plaintiff "appears to be highly limited in most areas due to symptoms," including difficulties getting out of bed and with self-care, an inability to keep a job due to panic attacks, and an inability to have a healthy social life or be with her family or have fun).

Moreover, the ALJ improperly relied on out of context and overstated record findings to

conclude that Dr. Baula's April 2016 opinion was internally inconsistent and not well-supported. For example, the ALJ reasoned that Dr. Baula's opinion that plaintiff had a low IQ or reduced intellectual function was inconsistent with his opinion that plaintiff "does not appear to have a deficit in intelligence but does report problems with reading comprehension while in school." (Tr. 31). This reasoning ignores the fact that Dr. Baula was asked directly below to "explain" his opinion that plaintiff had a low IQ or intellectual function. In doing so, Dr. Baula clarified that plaintiff does not have reduced intellectual functioning but reported problems with reading comprehension while in school. Dr. Baula's answer is not an internal inconsistency; rather, it is a clarification of his opinion. The ALJ also omitted key details in finding a purported inconsistency in Dr. Baula's opinion that plaintiff had a complete inability to function outside the home with a treatment note indicating that plaintiff walked to the store with her grandson. In the very same treatment note, plaintiff reported to her counselor that she "got really paranoid because a man was walking behind [her]" during the walk to the store with her grandson. (Tr. 511). Overall, because the ALJ applied a higher legal standard to Dr. Baula's treating source opinions and failed to provide good reasons for rejecting his opinions, the ALJ's decision to afford little weight to Dr. Baula's opinions is not supported by substantial evidence. Plaintiff's assignment of error with respect to the opinions of Dr. Baula should be sustained.

However, the Court finds that the weight afforded to the opinion of Ms. Reeves is supported by substantial evidence. In September 2015, Katherine Reeves, LPC, of the Comprehensive Counseling Center completed a daily activities questionnaire at the request of the state agency. Ms. Reeves noted that plaintiff took care of her personal needs, got along well with family and friends who she saw weekly for twenty minutes, took care of her grandson, prepared food with help, performed chores, and banked and paid bills without difficulty. (Tr. 325-26).

Ms. Reeves opined that plaintiff had poor stress tolerance due to anxiety; had anxiety when in public; and had difficulty standing and sitting for long periods of time. (*Id.*). Ms. Reeves listed plaintiff's treatment as individual mental health therapy. (Tr. 326).

Under the Social Security regulations, evidence from an "acceptable medical source" is required to establish the existence of a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06–03p, 2006 WL 2329939, at *2.[3] Evidence from "other sources," including counselors and therapists like Ms. Reeves, may be used to show the severity of the claimant's impairment and how it affects the individual's ability to work. 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p. The ALJ "should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p.

Here, the ALJ adequately explained her reasoning for affording little weight to Ms. Reeves' opinion. The ALJ reasonably explained that Ms. Reeves' opinion in relation to plaintiff's mental functioning was based on a recitation of plaintiff's subjective allegations. The ALJ reasonably determined that Ms. Reeves' opinion regarding plaintiff's activities of daily living "demonstrates relatively good mental functioning." (Tr. 31). The ALJ also explained that the RFC "allowed for more limitations than [Ms. Reeves'] opinion suggests were necessary." (Tr. 31). With respect to the physical limitations assessed by Ms. Reeves—that plaintiff had difficulty standing and sitting for long periods of time—the ALJ reasonably explained that these limitations fell outside of Ms. Reeves' expertise. (*Id.*). Plaintiff argues that these physical

[3] SSR 06-03p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-03p applies here.

limitations are consistent with the record and cites numerous records demonstrating her physical limitations in support. (Doc. 10 at 10). However, as a mental health therapist, Ms. Reeves is not qualified to opine on the severity of plaintiff's physical limitations and how these limitations affect plaintiff's ability to work. *See e.g.*, *Menefee v. Comm'r of Soc. Sec.*, 995 F. Supp. 2d 820, 830-31 (N.D. Ohio 2014) (holding that ALJ did not err in affording little weight to the opinion of a psychiatrist who opined on plaintiff's physical limitations). Accordingly, plaintiff's assignment of error with respect to opinion of Ms. Reeves should be overruled.

Finally, the Court rejects plaintiff's perfunctory argument that the ALJ impermissibly interpreted raw medical data. Plaintiff argues that the ALJ improperly interpreted raw medical data, and specifically, her foot x-rays showing abnormalities. (Doc. 10 at 11). Plaintiff argues that "[i]t appears that no physician interpreted the x-rays in specific functional terms, and the ALJ is not qualified to interpret this medical data in functional terms." (*Id.*).

A review of the ALJ's opinion shows that the ALJ considered plaintiff's complaints of foot pain at step two of the sequential evaluation process in evaluating whether her foot pain qualified as a severe impairment. (Tr. 18). The ALJ concluded that plaintiff's foot injury was not a severe impairment because the durational requirement had not been met and there "was no medical evidence supporting a finding that the [plaintiff]'s fracture persisted for twelve months." (Tr. 18-19). The ALJ cited x-rays from January 2017 and an April 2017 examination, *i.e.*, raw medical data, but did not impermissibly act as a medical expert in interpreting this evidence. Rather, the ALJ cited this evidence and plaintiff's decision to discontinue treatment in support of her conclusion that "the record contains no evidence that the [plaintiff]'s broken foot persisted at a 'severe' level for a continuous period of twelve months or more." (Tr. 18).

Accordingly, for the above stated reasons, the Court sustains plaintiff's assignment of error solely with respect to the weight afforded to Dr. Baula's opinions.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to re-weigh the medical opinion evidence in accordance with this decision; to reassess plaintiff's RFC, giving appropriate weight to the opinions of Dr. Baula, including an explanation on the record for the weight afforded to his opinions; to reassess plaintiff's credibility; and for further medical and vocational evidence as warranted.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date:  4/16/2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ROBERTA L. STEWART,
Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

Case No. 1:19-cv-180
McFarland, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

17